IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA OF
NORTHERN DIVISION

| | | |
|---|---|---|
| OSI, INC., a corporation, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| v. | ) | CASE NO. 2:98-cv-920-MEF |
| | ) | (WO) |
| UNITED STATES OF AMERICA, *et al.,* | ) | |
| | ) | |
|     Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This opinion addresses the latest chapter in the extended litigation between OSI, Inc. ("OSI") and the United States Government ("Government" or "Air Force"). The Government conducted landfilling activities on what is now OSI's property from 1956 until the early 1970s pursuant to leases with the land's previous owners. OSI purchased the parcel in 1979 and instituted this suit in 1998 after discovering that the landfill had contaminated the property's soil and groundwater. OSI brought a series of state-law tort claims against the Government pursuant to the Federal Torts Claims Act ("FTCA") and later amended its complaint to include violations of the Resource Conservation and Recovery Act ("RCRA") and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). After the district court granted summary judgment in favor of the Government on all counts, the Eleventh Circuit affirmed the dismissal of the FTCA claims but remanded the case for a full consideration of OSI's claims under RCRA and CERCLA. Accordingly, OSI filed an amended complaint with the Court that restated its claims under

the FTCA, RCRA, and CERCLA. In November of 2005, the Plaintiff filed a Motion for Partial Summary Judgment (Doc. #177), and the Defendants filed a Motion for Summary Judgment on OSI's tort claims (Doc. #175) and a separate Motion for Summary Judgment on the RCRA and CERCLA claims (Doc. #170). The Court has reviewed the submissions of the parties and finds, for the reasons set forth below, that the Defendants' motions are due to be GRANTED, and the Plaintiff's motion must be DENIED.

## JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346. The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The movant can meet this burden

by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motions. The submissions of the parties establish the following facts.

Beginning in 1956, the United States Air Force maintained three solid waste landfills on and near Maxwell Air Force Base. Two of these landfills, LF5 and LF6, were located on the base while the third, LF4, was positioned on private property to the immediate north of LF5 and LF6. The Thomason family owned this land and operated a construction and contracting business from the property. However, their use of the land was limited due to its proximity to the Alabama River and its corresponding vulnerability to flooding. To remedy this circumstance, the Thomasons decided to lease a portion of their property to the Air Force for landfilling purposes at a rate of one dollar per year. This arrangement promised to be mutually beneficial as the Air Force gained access to a cheap waste disposal site and the Thomasons were able to have their land elevated to protect against floods.

The parties executed a lease that spelled out the contours of the landfill, but according to Phillip Thomason, "[t]he Air Force had permission to use the property owned by our company and areas designated for landfill use, regardless of the precise boundaries listed in the leases. We identified low-lying areas we wanted filled in and Maxwell Air Force Base was directed to fill those areas. Landfilling was carried out with our knowledge and approval." On LF4, the Air Force erected a berm that ran along the eastern border of the landfill. Phillip Thomason stated that the berm was intended to keep scavengers out of the landfill and to provide extra protection against flood waters. Although it appears that the Air Force primarily carried out its activities inside the berm, Phillip Thomason testified that on occasion members of his family "would get the tractor operator to haul us out a road to get

4

in and out of the area, and then he'd put the berm back."

In the early 1970s, the lease between the Government and the Thomasons expired, and the Air Force shifted its landfill activities to LF5. The Air Force transported waste to LF5 until 1974 and then utilized LF6 from 1974 to 1986. From 1982 to 1987, the Alabama Department of Environmental Management ("ADEM")—the state agency authorized to promulgate waste disposal regulations pursuant to RCRA—inspected LF6 and reported on the Government's compliance with the applicable regulations. In addition, ADEM approved the Air Force's closure of LF6 in 1993 and has thus far found the Government in compliance with all post-closure requirements.

OSI purchased the parcel of land that included LF4 in 1979 and directed its metal building business from that site. On October 1, 1994, the Air Force, following the provisions of CERCLA, began an investigation of possible contamination on an area known as Operable Unit 1 ("OU-1"). OU-1 was comprised of all land within and adjacent to Maxwell Area Force Base where solvents from Air Force activities were believed to have affected the groundwater. LF4, LF5, and LF6 were included in the area under examination and were subjected to extensive groundwater sampling along with all other OU-1 sites. After the Air Force alerted OSI to possible groundwater contamination from the landfills in 1997, OSI commissioned its own study of the property, which revealed hazardous compounds in the soil, some of which exceeded statutorily prescribed federal limits.

In August 1998, OSI filed this suit pursuant to the FTCA against the Government,

alleging tortious injuries from the landfill contamination. OSI later added claims based on RCRA and CERCLA to its complaint. On March 26, 2001, Judge Thompson issued an opinion that disposed of OSI's tort claims as barred by the discretionary function exception to the FTCA. The court also ruled in favor of the Government on OSI's RCRA and CERCLA claims. On appeal, the Eleventh Circuit affirmed the trial court's ruling on the FTCA claims but remanded the case for further consideration of the environmental law issues.

In the meantime, the Air Force published the results of its investigation and proposed remedial alternatives for OU-1 in February 2001. A month later, the Air Force held a public meeting to discuss the results of the investigation and to receive comments from members of the community. During the thirty day comment period that followed, the Air Force did not receive any input from OSI or other adjoining landowners. The Air Force then identified a remedy that it felt best met the requirements of CERCLA and the National Contingency Plan and presented its proposal to ADEM and the public. After this process, the Air Force selected a final remedy and documented its decision in October 2002. Thereafter, the Air Force sought to implement its remediation plan and has initiated new investigations as further contamination has been uncovered.

Before OSI refiled its complaint in this Court, the Government provided it with information that demonstrated that the Air Force had disposed of waste beyond both the technical boundaries of LF4 and the berm that further defined its contours. On January 3,

2005, OSI filed its amended complaint, which contained a restatement of its tort claims and claims under RCRA and CERCLA. In November of 2005, the parties filed cross motions for summary judgment.

## DISCUSSION

OSI's complaint is amenable to division into two distinct parts. The first seeks relief under the FTCA for a number of state-law tort causes of action. In the second, OSI brings claims under RCRA and CERCLA. The Court will address these contentions according to this arrangement.

**A. FTCA**

Before confronting the merits of OSI's FTCA claims, the Court must determine whether OSI seeks to relitigate issues that were previously resolved by the Eleventh Circuit's March 2002 decision. "Under the law of the case doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 (11th Cir. 2005) (quoting *Heathcoat v. Potts*, 905 F.2d 367, 370 (11th Cir. 1990)). This doctrine "serves several important purposes, including (1) insuring that litigation on an issue will come to an end, (2) discouraging 'panel shopping' at the circuit court level, and (3) assuring the obedience of lower courts to the decisions of appellate courts." *Heathcoat*, 905 F.2d at 370. The "law of the case doctrine applies to all issues decided expressly or by necessary implication" to

prevent trial courts from giving further review to the mandate of an appellate court. *Piambino v. Bailey*, 757 F.2d 1112, 1119-20 (11th Cir. 1985).

There are three recognized exceptions to this general rule. The "law of the case doctrine does not apply to bar reconsideration of an issue when (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to that issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 (11th Cir. 1984). While the introduction of new evidence may create a set of issues that were left unaddressed by the earlier appellate ruling, this evidence must present the trial court with substantially different circumstances than those the appellate court confronted before reconsideration of the decision is proper. *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1283 (11th Cir. 2005). Also, in the interest of finality, courts should not depart from the law of the case doctrine where the new evidence was available at the first examination of the issue. *See Baumer v. United States*, 685 F.2d 1318, 1319-21 (11th Cir. 1982); *see also Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 697-99 (Fed. Cir. 2001) (refusing to revisit a prior determination in light of new evidence because the information was available at the time of the first appeal).

There is no doubt that the Court of Appeals examined the precise issue currently before the Court in its 2002 opinion. *See OSI, Inc. v. United States*, 285 F.3d 947, 950-53 (11th Cir. 2002). The Eleventh Circuit concluded that the Government was entitled to

protection under the discretionary function exemption because the decisions concerning waste disposal involved an element of judgment or choice shielded from liability under the FTCA. In its attempt to avoid the law of the case doctrine, OSI points out that the record before the Eleventh Circuit did not contain the evidence that the Government deposited waste beyond the technical boundaries of its lease with the Thomasons. According to OSI, the possibility that the Government trespassed on the Thomasons' property while performing its landfill operations significantly alters the discretionary function analysis employed by the Eleventh Circuit.

OSI's supplemental allegations do not substantially change the circumstances that this case originally presented to the trial and appellate courts. Indeed, the thrust of the evidence firmly establishes that the Air Force worked in conjunction with the Thomasons to build up the low-lying areas on what is now OSI's property without regard for the written lease's technical boundaries. Phillip Thomason's testimony demonstrates the flexible relationship that existed between parties regarding the boundaries of the landfill. According to him, the Thomason family directed landfilling activity on the property "regardless of the precise boundaries listed in the leases" and all landfilling activity was carried out with the family's permission. Thus, the question currently before the Court is no different from that previously decided because the Air Force carried out its activities in compliance with its agreement with the Thomasons.

The only evidence OSI offers to refute this conclusion is a single statement by Phillip

9

Thomason to the effect that all landfilling activity was to take place on the west side of the berm. However, Phillip Thomason's testimony on this point was that he did not know whether the Air Force had authorization to dispose of waste beyond the berm. While this statement viewed in isolation could presumably provide some minimal support for OSI's position, Phillip Thomason's testimony as a whole dictates otherwise. Indeed, he stated earlier in his deposition that his family would occasionally have the Air Force's tractor operator "haul us out a road to get in and out of that area." This testimony conforms with the overall informal nature of the relationship between the parties that guided the landfilling activity on the property without concern for any technical limitations. Thus, although the berm may have defined the primary bounds of the landfill, there is insufficient evidence to prove that it acted as a prohibitive border throughout the nearly twenty year relationship between the Thomasons and the Air Force.

Because OSI's evidence is substantially similar to that on which the Court of Appeals reached its decision in this case, the law of the case doctrine controls. The Eleventh Circuit specifically found the Air Force's decisions involving the landfills subject to the discretionary function exception to the FTCA. The minor evidentiary deviation put forward by OSI does not change this result, especially when the Court considers the fact that OSI could have discovered this information during its initial suit.[1] As a result, the Court must

---

[1] Although the Government did not notify OSI of the waste beyond the parameters of LF4 until December 2002, nothing in the record suggests that OSI was unable to discover this information on its own or was prevented from uncovering this information for itself beforehand and presenting it in its original pursuit of these claims. To the contrary, OSI's own rendition of the facts supports

hold true to the Eleventh Circuit's mandate and dismiss OSI's tort claims as barred by the FTCA.[2]

**B. RCRA and CERCLA**

The Court must now examine OSI's claims under RCRA and CERCLA, which the Eleventh Circuit expressly remanded to this Court for further consideration. OSI seeks to hold the Government liable under CERCLA §§ 107 and 113 for the response costs it has incurred in the assessment of the environmental damage of its property. Under RCRA, OSI pursues injunctive relief to halt the Government's allegedly ongoing disposal of hazardous and solid wastes and to mandate the completion of an effective remedial plan.

"CERCLA provides two possible avenues for a party to recover monies it spends cleaning up a polluted site." *Blasland, Bouck & Lee, Inc. v. City of North Miami*, 283 F.3d 1286, 1301 (11th Cir. 2002). Section 107 of CERCLA allows a plaintiff to bring "a suit for direct cost recovery." *Id*. This option is only available to "'innocent parties,' that is, 'parties who are not themselves liable or potentially liable for response costs under § 107(a) of CERCLA." *Id*. at 1302 (quoting *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1513 (11th Cir. 1996)). Typically, government agencies are the only entities that

---

the conclusion that OSI was aware that the Air Force deposited waste outside of LF4's boundaries at the time of its first complaint.

[2] This conclusion essentially doubles as a finding that no issue of material fact exists to bar summary judgment. OSI's failure to avoid the law of the case doctrine coalesces with its lack of evidence that the Air Force trespassed on the Thomasons' property. Thus, even if the Court were to give full reconsideration to the FTCA claims, OSI has not produced sufficient evidence to alter the original result.

qualify to bring a cause of action under this provision. *Id*. In any event, the current owner or operator of a polluted site is a potentially responsible party under § 107 and therefore cannot bring a claim for direct cost recovery. 42 U.S.C. § 9607; *see Redwing Carriers*, 94 F.3d at 1496. OSI is the current owner and operator of the property on which LF4 is located. As a result, OSI is a potentially responsible party under § 107 and cannot pursue a cost recovery action under that section.

Section 113 provides the alternate means of recovery under CERCLA. 42 U.S.C. 9613. "In contrast to a § 107(a) action, a contribution claim under § 113(f) is a means of equitably allocating response costs among responsible or potentially responsible parties." *Redwing Carriers*, 94 F.3d at 1513. However, "contribution may only be sought . . . 'during or following' a specified civil action." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 542 U.S. 157, 166 (2004). This limitation means "that a potentially responsible party may seek contribution under § 113(f)(1) only if the party has already been sued under CERCLA." *Schaefer v. Town of Victor*, 457 F.3d 188, 190 (2d Cir. 2006). OSI does not meet the threshold requirements of § 113 because it has not been sued under CERCLA. Therefore, this claim too must be dismissed.

Before addressing OSI's RCRA claims, the Court must determine whether it has proper jurisdiction over these allegations. Section 113(h) of CERCLA precludes federal courts from hearing most challenges to remedial actions selected under CERCLA §§ 104 or 106. 42 U.S.C. § 9613(h); *see Alabama v. E.P.A.*, 871 F.2d 1548, 1557 (11th Cir. 1989).

Normally, this recognition would unquestionably dispose of OSI's RCRA count because the Government has begun the implementation of its remedial CERCLA plan at the OU-1 site. However, in this situation less clarity exists because the remedial activity takes place largely on federal property. Thus, according to OSI, the authority for the remedial plan originates from § 120, which focuses specifically on federal facility cleanups and, unlike § 104, is unaffected by the jurisdictional bar of § 113(h). The Government, in contrast, argues that § 113(h) does apply because § 104 is the source of authority for all remedial cleanups, whether on federal property or otherwise, and that § 120 merely supplies further guidelines for remediation of federal lands.

The resolution of this question turns on an interpretation of several statutory provisions in CERCLA, and the federal courts that have addressed this issue are far from uniform in their respective approaches. For instance, in *Fort Ord Toxics Project, Inc. v. California E.P.A.*, 189 F.3d 828, 833-34 (9th Cir. 1999), the plaintiffs sought to challenge a CERCLA remedial action at a military base and to avoid the jurisdictional bar of § 113(h). The *Fort Ord* plaintiffs urged essentially the same arguments that OSI invokes here, namely that federal remedial actions proceed through § 120 rather than § 104 and are resultantly not protected by § 113(h). The Ninth Circuit determined that CERCLA's plain language did not preclude federal courts from reviewing remedial actions taking place at federal facilities. The opinion discerned that § 120 contains a grant of authority separate from §§ 104 and 106 and, as a result, reasoned that cleanups based on this provision are exempt from the

13

jurisdictional bar of § 113(h). *Id*. at 833. The court then continued to track the language and purpose of the statute by distinguishing CERCLA's treatment of remedial actions—which are intended to be permanent solutions—as compared to removal actions—where temporary measures are taken to prevent the immediate release of hazardous substances. *Id*. at 833-34; *see also* 42 U.S.C. § 9601(23) & (24) (defining "removal" and "remedial action"). This analysis also supported the conclusion that Congress could have intended to afford distinct treatment to each type of action due to their different characteristics. *Id*. at 834. Accordingly, the Court of Appeals found that § 113(h) does bar challenges to removal actions at federal facilities but not to remedial efforts at those same locations and that therefore the plaintiffs could proceed with their challenge to the remedial plan at the federal site. *Id*.

A group of district courts have reached a contrary result on this issue. *See Werlein v. United States*, 746 F. Supp. 887, 891-92 (D. Minn. 1990); *Heart of Am. Northwest v. Westinghouse Hanford Co.*, 820 F. Supp. 1265, 1278 (E.D. Wash. 1993); *WorldWorks I v. Dep't of Army*, 22 F. Supp. 2d 1204, 1207 (D. Colo. 1998). The most notable of these decisions is *Werlein*, wherein the trial court concluded that § 104 was the sole locus of authority for federal facility cleanups. 746 F. Supp. at 891-92. The court interpreted § 120 as merely a procedural provision meant to guide CERCLA activities where the property in question belongs to the federal government. *Id*. The opinion also explained that allowing suits to challenge remedial actions on federal property would subvert the purpose of the

14

CERCLA statute by allowing litigation to interfere with ongoing cleanup efforts. *Id*.

After reviewing these interpretations and the statute, the Court finds the *Fort Ord* opinion to be the most faithful approach to CERCLA's statutory language and structure. As that opinion pointed out, the plain language of § 120 vests authority in the EPA Administrator to conduct remedial activity on federal lands and provides a framework within which the agency is to proceed. This grant of authority is recognized both in § 120 and in other CERCLA provisions. Section 120(g) states that "no authority under this section may be transferred, by executive order or otherwise, to any other officer or employee of the United States or to any other person." 42 U.S.C. § 9620(g). Also, § 117(a) lists § 120 among the statutory provisions that empower remedial actions to be undertaken. 42 U.S.C. § 9617. A consideration of these provisions has convinced this Court that § 120 mandates a separate regulatory regime for the remediation of pollution at federal facilities. Thus, the Court finds that remedial activity on federal property proceeds under the authority of § 120, rather than § 104, and is not subject to the jurisdictional bar of § 113(h).

The Court must now turn to the merits of OSI's RCRA claim. OSI contends that the Government's disposal practices on the three landfill sites and on Maxwell Air Force Base have led to the disposal of hazardous wastes without a permit and in excess of permissible federal limits in violation of RCRA § 3005(a). According to OSI, this pollution has infiltrated its property through water drainage and has contaminated the groundwater, soil, and subsoil. OSI asserts that this situation presents an imminent and substantial

15

endangerment to public health and the environment. The Government has responded by arguing that it is immune from liability for disposal activities that took place prior to the statute's enactment in 1980 and that OSI has otherwise failed to show any statutory violation stemming from its activities since RCRA's passage.

At the outset, the Court recognizes that the Government is correct in its assertion that it cannot be held liable for landfilling activities that took place prior to RCRA's enactment in 1980. RCRA has been interpreted not to impose retroactive liability. *See, e.g.*, *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1158-59 (9th Cir. 1989). This acknowledgment disposes of OSI's allegations concerning LF4 and LF5 because the Government ceased using these areas before 1980.

Turning to OSI's remaining claims, RCRA §7002(a)(1)(A) authorizes citizen suits "against any person . . . who is alleged to be in violation of any permit" effective pursuant to § 3005(a). 42 U.S.C. § 6972(a)(1)(A). To establish a claim in this regard, a plaintiff must show that the defendant is (1) subject to regulation under RCRA and (2) in violation of a permit issued pursuant to RCRA. Although there is no doubt that the Government is subject to RCRA's provisions—as defined by ADEM—the evidence currently before the Court demonstrates that the Government is in compliance with all applicable regulations. OSI has failed to produce any evidence to substantiate its accusations that the Government is in violation of any waste disposal permit and thus cannot maintain this claim in the face of the Government's motion.

RCRA also provides for citizen suits "against any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). Under this section, "[a]n endangerment can only be 'imminent' if it 'threatens to occur immediately.'" *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485 (1996) (quoting Webster's New International Dictionary of English Language 1245 (2d ed. 1934)). "[T]his language 'implies that there must be a threat which is present *now*, although the impact of the threat may not be felt until later.'" *Id.* (quoting *Price v. United States Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994)). To show an "imminent and substantial" threat, the plaintiff must do more than establish the presence of solid or hazardous wastes at a site. *Foster v. United States*, 922 F. Supp. 642, 661 (D.D.C. 1996). Instead, "endangerment must [be shown to] be substantial or serious, and there must be some necessity for the action." *Price*, 39 F.3d at 1019. Also, the fact that remedial activity in accordance with CERCLA has commenced at a site greatly reduces the likelihood that a threat to health or the environment is imminent. *See Adams v. NVR Homes, Inc.*, 135 F. Supp. 2d 675, 688 (D. Md. 2001); *Christie-Spencer Corp. v. Hausman Realty Co., Inc.*, 118 F. Supp. 2d 408, 419-23 (S.D.N.Y. 2000).

Here, OSI has presented "no credible evidence" to suggest that an imminent or substantial endangerment to health or the environment exists on OSI or Government property. *See Davis Bros., Inc. v. Thornton Oil Co.*, 12 F. Supp. 2d 1333, 1338 (M.D. Ga.

17

1998). Furthermore, the Government is conducting a remediation program in conjunction with ADEM to repair any contamination and resulting dangers that do exist. These two factors together lead the Court to conclude that the Government is entitled to summary judgment on this claim as well.

## CONCLUSION

For the reasons stated above, it is hereby ORDERED that the Defendants' Motions for Summary Judgment (Doc. #170 & #175) are GRANTED, and the Plaintiff's Motion for Partial Summary Judgment (Doc. #177) is DENIED.

A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this the 3rd day of January, 2007.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE